UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**WARREN B.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:20-cv-01260-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on July 17, 2020, denied Plaintiff's applications for disability insurance benefits and supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 14), and the Commissioner has filed a similar motion (Doc. 15).  For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant.

## I.  BACKGROUND

    This case has a somewhat lengthy procedural history.  On May 31, 2013 and June 19, 2013, Plaintiff protectively filed his applications for benefits, alleging that he became disabled on June 1, 2010.  His case proceeded through the normal adjudicative process, including a hearing before an Administrative Law Judge, and ultimately ended up before this Court.  The Court remanded the case on November 16, 2018, *see Warren B. v. Berryhill*, Case No. 1:17-cv-0021, after which the Appeals Council remanded it to an ALJ for additional proceedings.  Plaintiff appeared at a second administrative hearing held on October 23, 2019.  Both Plaintiff and a vocational expert, Coleman K. Cosgrove, testified at that hearing.

    The Administrative Law Judge issued an unfavorable decision on November 25, 2019.  In that decision, the ALJ first concluded that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2014, and that he had not engaged in substantial gainful activity since his alleged onset date.  He then found that Plaintiff suffered from severe impairments including left knee problems (specifically, a grade III tear of the anterior cruciate ligament with anterior translation of the tibia and a bucket-handle tear involving the body and posterior horn of the medial meniscus with an anterior flipped fragment as well as partial extrusion of the meniscal root into the intercondylar notch), status-post arthroscopic partial

medial meniscectormy of the left knee performed in August 2012, sprain of the medial collateral ligament, internal derangement and old disruption ACL, and psoriatic arthritis. He further determined that these impairments, viewed singly or in combination, were not of the severity necessary to qualify for disability under the Listing of Impairments.

Moving on to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to perform light work with the need for a sit/stand option at will. Also, Plaintiff could not climb ladders, ropes, or scaffolds, and could not kneel, crouch, or squat, but he could occasionally climb stairs. Finally, Plaintiff could do only simple, unskilled work in an environment which only occasionally subjected him to extremes of temperature and wetness.

The ALJ next determined that Plaintiff could not do his past relevant work as a hand packager, a job performed at the medium exertional level. He found, however, that even with his limitations, Plaintiff could perform jobs like garment sorter, office helper, and mail clerk, and the ALJ determined that these jobs existed in significant numbers in the national economy. The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in his motion for judgment, raises two issues. He contends (1) that the ALJ failed to follow the Appeals Council's remand order and remedy the issued addressed in this Court's prior order; and (2) that the ALJ's finding that Plaintiff's statements regarding his symptoms were inconsistent with the evidence was improperly supported by mischacterizations of the evidence.

## II.  THE KEY EVIDENCE

The Court begins its summary of the evidence by quoting from the prior Opinion and Order filed in this case, omitting the citations to the transcript filed in that matter:

> In May 2013 plaintiff, who was 37 years old, filed applications for DIB and SSI, alleging a disability onset date of June 1, 2010, due to a fractured T12 vertebrae and pain in both knees. Plaintiff sustained a compression fracture of a thoracic vertebra in 2010, which was treated with a brace. According to James Budny, M.D., he was "doing well", and although he was involved in an altercation in September 2011 which caused some soft tissue injuries, he was determined to be "neurologically intact and ... almost pain free."
>
> Plaintiff first sought treatment for knee pain in May 2012, and a July 2012 MRI revealed a grade III tear of the anterior cruciate ligament of his left knee, but because of a lack of periligamentous edema or hemorrhage, it was believed that it was a "subacute to chronic injury." Peter Shields, M.D., opined that the injury dated back to 2001 and that it had not caused "any significant disability' for the prior eleven years. Plaintiff was also diagnosed with a bucket handle tear of his medial meniscus, for which he underwent arthroscopic surgery in August 2012.

>In May 2013, plaintiff reinjured his knee and was seen several times thereafter for complaints of pain, tingling and weakness in his knee, but his range of motion and strength were normal. For treatment he was given a cortisone injection and attended physical therapy.
>
>At his September 4, 2013 consultative examination with Hongbiao Liu, M.D., plaintiff complained only of low back pain radiating into his legs. Plaintiff informed Dr. Liu that it required him to change positions after five minutes while sitting or standing. Dr. Liu diagnosed plaintiff with chronic low back pain and found that he had mild limitations for prolonged walking, bending and kneeling.
>
>In May 2014 plaintiff complained of knee pain and was given a cortisone injection for a "flare up of his patellofemoral pain." In July 2014 he returned to his orthopedist after injuring his left knee in a fall. He was diagnosed with "[l]eft knee arthritis with aggravation and knee sprain" and given a knee immobilizer and crutches. Two days later he returned to his orthopedist, at which time he denied any pain and stated that his knee was "doing very well."
>
>Plaintiff also had a left shoulder issue, which arose in February 2014, when he reported pain in that shoulder. His strength in the shoulder in all directions was rated as a 5/5. He was diagnosed with subacromial bursitis, which was treated with exercise, physical therapy and Naproxen. He returned in March 2014, and reported that he had "some tightness on occasion in his left shoulder but it has greatly improved."

*Baltes* v. Berryhill, 2018 WL 5993365, at *1–2 (W.D.N.Y. Nov. 15, 2018). This Court also noted that at the administrative hearing, "plaintiff testified that he can stand for 15 minutes at one time and sit for 15 to 20 minutes at one time, and that he would be able to alternate between those positions for up one hour, but would be immobile for the balance of the day." *Id*.

At the second administrative hearing, Plaintiff first testified that he had been living with family members and had no independent source of income. He went to school through the tenth grade and had been trying to obtain his GED but had not yet succeeded. Since the prior hearing, he had been looking for work but did not get any job offers. He believed he could not do a job which would require constant standing or any amount of kneeling or crouching due to his back and knee issues. He had flare-ups in his back on rare occasions but pain in his knees almost constantly. Reaching overhead was also an issue due to bursitis in his shoulder. Additionally, he had been diagnosed with psoriatic arthritis but it was well-controlled with medication.

When asked how long he could stand and sit, Plaintiff said that he could stand for an hour a day and up to half an hour at a time. He could walk a little less than half a mile with rest stops and could sit for an hour at a time. That would cause stiffness in his back, however, for which he would either take medication or lie down. He avoided lifting and basically did no household

chores. During a typical day, he watched television, read, or used a computer.

The vocational expert testified next. Based on Plaintiff's description of his past work, the expert classified it as hand packaging, done at the medium exertional level. He was then asked questions about a hypothetical person with Plaintiff's vocational background who was limited to light work with many restrictions, including being able to sit or stand for only four hours in a workday. He agreed that such a person could do neither Plaintiff's past job or any other full-time job. Next, he was asked questions about a person who could do light work with a sit/stand option at will and who had various postural and environmental restrictions. That person, he testified, could do jobs like garment sorter, officer helper, and mail clerk or sorter. Such jobs did not require any overhead reaching. They could not be done by someone who needed additional five to ten minute breaks in the morning and afternoon in addition to regular work breaks, and the same was true of someone who missed a day and a half of work per month on a regular basis.

In addition to the medical evidence summarized in this Court's prior Opinion, the record shows that in April, 2015, Plaintiff sought treatment for his knee pain following a fall. He also reported some back pain. On examination, it was difficult for the doctor to determine the extent of Plaintiff's knee stability due to guarding. He was diagnosed with lumbar radiculopathy, bilateral knee contusions, and a right ankle sprain, and rest, compression, and elevation were recommended. Several months later, he received cortisone injections which alleviated his pain to some extent, and he received another injection in 2016. An MRI of his back done in 2015 showed minimal degenerative changes but some facet arthropathy and either chiropractic treatment or deep tissue massage were recommended.

In 2018, Plaintiff was diagnosed with psoriasis with arthropathy. He was started on Humira. An ultrasound revealed evidence of synovial hypertrophy consistent with arthritis. The following year, an x-ray of his left knee showed mild degenerative changes of the medial joint compartment and corticated ossification along the distal lateral femoral condyle. A note dated October 7, 2019, showed he was doing well on the Humira and had no prolonged stiffness, joint pain, or swelling.

As noted in the Court's prior decision, there are medical opinions in the record, all dating from before the order of remand issued. Dr. Liu, who examined Plaintiff in 2013, concluded that Plaintiff had mild limitations for prolonged walking, bending, and kneeling. Dr. Polina, who completed a form for the Erie County Department of Social Services in 2014, stated that Plaintiff was not disabled from working and was cleared to return to work with no restrictions, and Dr. Slough reached the same conclusion. (Tr. 803-12). It does not appeal that these latter two opinions were part of the record when the first administrative decision was rendered.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

"[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

### A.  Compliance with the Remand Order

Plaintiff argues, first, that the ALJ did not comply with the order issued by the Appeals Council on remand.  In accordance with this Court's Opinion and Order, the Appeals Council directed the ALJ to articulate how he came to the conclusion - as he did in his prior decision - that Plaintiff could meet the standing requirements of light work by alternating positions on an hourly basis.  Plaintiff asserts that the ALJ did not have a proper basis for making that determination and his decision therefore does not meet the "substantial evidence" standard.  The Commissioner responds that Plaintiff is really arguing only about whether that standard has been met, and contends that there was ample evidence to support the ALJ's finding.

Plaintiff's argument does have two separate components, the first of which is whether the ALJ complied with the directives issued by this Court and by the Appeals Council.  It is therefore necessary to review the language of each of those determinations.

In its Opinion, this Court concluded that the ALJ had "failed to identify the evidence he, as a layman, relied upon in assessing plaintiff with that very specific functional limitation [alternating sitting and standing on an hourly basis], or how he determined that plaintiff would

otherwise be able to meet the standing and sitting required for light work." *See* 2018 WL 5993365, at *3. This Court rejected the Commissioner's argument that the opinion of Dr. Ratleff supported the ALJ's finding, commenting that a finding concerning sitting and standing was "not an inference [the] ALJ ... could make on his own without clarification from Dr. Ratliff or some other medical source." *Id*. This Court therefore concluded that "whatever the basis for [the] ALJ's ... determination that plaintiff could meet the standing requirement for light work by alternating between sitting and standing every hour, he failed to sufficiently articulate that in his opinion, thereby precluding meaningful review." *Id*. at *4. A remand was ordered for further proceedings consistent with these findings. The Appeals Council, implementing this Court's order, remanded the case to the ALJ "for further proceedings consistent with the order of the court," directing the ALJ to "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (Tr. 522).

Taking the last portion of the Appeals Council's order first, the ALJ held a new hearing, admitted new documents into the record, and issued a new decision. Those actions are all consistent with the Appeals Council's directions. The remaining portion of the Appeals Council's order simply incorporates this Court's remand order. As noted above, the primary basis for that order was the ALJ's failure to explain in sufficient detail what evidence he relied on when he concluded that Plaintiff could satisfy the standing requirements of light work by alternating between sitting and standing on an hourly basis. In his decision, the ALJ acknowledged that directive and provided this explanation:

> I relied heavily on the claimant's own testimony, and the inclusion of a medical source statement was included in the record at 21F. Due to the claimant's knee impairment and his reported symptomology (sic), the claimant would require a sit-stand option at will. The claimant's most recent knee X-ray revealed no acute fracture, mild degenerative changes of the medial joint compartment, and corticated ossification that may be due to a spur, although an intra-articular loose body could not be ruled out, and a meniscal tear was not excluded.... The claimant's good joint alignment was noted.... His treatment has been conservative over an abundance of time, noting that no surgical intervention has been suggested. The claimant testified that any work that requires kneeling or squatting would be precluded due to his knee pain, as such, a limitation to never perform such maneuvers is included.

(Tr. 420). The medical source statement to which the ALJ referred includes the opinions of Dr. Polina, who treated Plaintiff for headaches and shoulder pain, and of Dr. Slough, an orthopedic specialist, who treated Plaintiff for his lower leg condition. The former opinion, noting no work-related restrictions stemming from the neck and shoulder impairments, was given great weight, and the latter opinion, also declining to find work-related limitations, was given only partial weight due to the fact that after that opinion was rendered, "the claimant has continued to have knee pain" and, giving him the benefit of the doubt, the ALJ found that he did have some limitations based on that impairment. (Tr. 420-21).

It is apparent from these portions of the ALJ's decision that he relied on several items of evidence in reaching his conclusion that Plaintiff could, with the accommodation of sit-stand option, do a limited range of light work. Such evidence included Plaintiff's testimony at the second administrative hearing, the lack of more aggressive treatment for his back and knee impairments, and the two 2014 opinions indicating a complete absence of work-related restrictions attributable to Plaintiff's headaches, neck and shoulder pain, and lower leg disorder. It remains to be determined whether this evidence adequately supports the ALJ's decision, but the Court concludes that the ALJ adequately complied with the instructions accompanying the remand by articulating, in greater detail, the basis for his determination.

Plaintiff contends that his testimony and the medical source statements upon which the ALJ relied do not provide sufficient support for the ALJ's decision. He argues that the statement from Dr. Polina is not relevant to the ability to sit or stand because Dr. Polina treated Plaintiff only for headaches and neck and shoulder pain. This latter argument, while correct as far as it goes, ignores the fact that the ALJ relied on not one but two medical source statements contained in Exhibit 21F. The second, as noted above, came from Dr. Slough, who did treat Plaintiff for his lower leg complaints. His opinion, which was that Plaintiff had no functional limitations, provides support for the ALJ's decision that Plaintiff's knee impairment did not prevent him from alternating between sitting and standing at will.

As to Plaintiff's testimony, at the first hearing, he said that sitting for prolonged periods caused his knee to get "spasmy" and that standing seemed to help. He could, however, both sit and stand for fifteen minutes at a time and walk a quarter of a mile, but he did not think he could alternate sitting and standing for more than an hour. At the second hearing he said he could not stand for a full day but could stand for half an hour at a time, such as when he showered. He also said he could go grocery shopping if he had the means to do so and could walk for half a mile with rest breaks. When asked if he could do a sit-down job, he said that if he sat for an hour he would get stiff. The ALJ attempted to accommodate this limitation by permitting Plaintiff to sit and stand at will.

The Court finds that the ALJ relied on substantial evidence when he found that Plaintiff could alternate sitting and standing throughout the day. This was a more generous assessment of Plaintiff's limitations than required by Dr. Slough's opinion. It represents a reasonable interpretation of the various statements made by Plaintiff during the two hearings. As this Court has said, it is not error for an ALJ to rely on a claimant's testimony when imposing a sit-stand option. *See, e.g., Baker o/b/o Baker v. Berryhill*, 2018 WL 1173782 (W.D.N.Y. March 6, 2018); *see also Christine S. v. Comm'r of Social Security*, 2021 WL 3721135 (Aug. 23, 2021). Because a reasonable person could have reached the same conclusion on this issue as did the ALJ, Plaintiff's first claim of error does not support an order of remand.

### B. Credibility

Plaintiff's other claim of error relates to the ALJ's finding that Plaintiff's statements

about the extent to which he was limited by his symptoms were not fully consistent with the record.  He argues that the ALJ improperly based this conclusion on the fact that Plaintiff had made an effort to obtain employment while his application was pending, pointing out that this Court has held that such unsuccessful attempts support, rather than undermine, a claimant's testimony that his or her impairments make it difficult to obtain gainful employment.  Plaintiff's bolsters his argument by noting that many of the jobs he applied for were part-time, and that the ability to work on a part-time basis also does not preclude a finding that a claimant cannot do substantial gainful employment.  The Commissioner counters that the ALJ properly followed the dictates of SSR 16-3p and that he was entitled to consider Plaintiff's efforts to find a job, along with other factors, in determining that Plaintiff's testimony was not entirely consistent with the record.

As this Court stated in *Wynn v. Comm'r of Social Security,* 342 F. Supp. 3d 340, 350 (W.D.N.Y. 2018):

> The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 427171, at *6, 2013 U.S. Dist. LEXIS 15109, at *22 (N.D.N.Y. Jan. 15, 2013), *adopted*, 2013 WL 427166, 2013 U.S. Dist. LEXIS 14944 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart,* 440 F.Supp.2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).

Further, SSR 16-3p lists a number of factors which an ALJ is to take into account in determining how to assess the consistency of a claimant's testimony, including (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Here, the ALJ considered a number of these factors, and not just the fact that Plaintiff applied for work.  He noted that with the exception of an arthroscopic surgery in 2012, Plaintiff was treated conservatively over the course of his impairment. (Tr. 419).  After commenting on the fact that Plaintiff had applied for work, the ALJ highlighted a conflict between Plaintiff's complaints of knee pain and the results of the 2013 consultative examination, as well as objective evidence indicating only minimal findings. (Tr. 419-20).  Contrary to Plaintiff's argument, the ALJ did not focus exclusively on the fact that Plaintiff had been trying to find

work, and it is worth noting that Plaintiff testified that at least part of the reason he had not been offered employment was that he had not worked in so long.  Taking all of these factors into account, and being mindful of the deference due to the ALJ's findings on this issue, the Court finds no basis for remanding the case for further consideration of this matter.

## V.  CONCLUSION AND ORDER

      For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 14), **GRANTS** the Commissioner's motion (Doc. 15), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

                                        **/s/ Terence P. Kemp**
                                        **United States Magistrate Judge**